UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**TRACY MONTGOMERY, AS PARENT AND NATURAL GUARDIAN OF I.M., AND INDIVIDUALLY,**

**Plaintiff,**

**- against -**

**MELISSA AVILES-RAMOS, ET ANO,**

**Defendants.**

---

**25-cv-6623 (JGK)**

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiff, Tracy Montgomery ("Montgomery" or the "parent"), acting individually and on behalf of I.M., a student with a disability, brought this action against the New York City Department of Education (the "DOE") and Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education, pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C § 1400, et seq. See Compl., ECF No. 1. On January 26, 2026, the plaintiff moved for summary judgment on all of her requests for relief. See Pl.'s Mot. Summ. J. ECF No. 21; Pl.'s Mem. Law Supp. Mot. Summ. J. ("Pl.'s Mot."), ECF No. 22. On April 23, 2026, the defendants cross-moved for summary judgment dismissing the complaint in its entirety. See Defs.' Mot. Summ. J., ECF No. 31; Mem. Law Supp. Mot. Summ. J. ("Defs.' Mot."), ECF No. 31-1. For the reasons that follow, the plaintiff's motion is **denied**, and the defendants' cross-motion is **granted**.

# I.

## A.

"Congress enacted the IDEA to promote the education of students with disabilities." A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ., 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013). "Under the IDEA, states receiving federal funds are required to provide 'all children with disabilities' a 'free appropriate public education.'"[1] Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998). A free appropriate public education ("FAPE") must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." Gagliardo, 489 F.3d at 107.

To achieve this end, the IDEA requires state or local education agencies to provide each disabled student with an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 448 (2d Cir. 2015). Parents may challenge their child's IEP as inadequate by filing a Due Process Complaint ("DPC"), which triggers an administrative-review process by an Impartial Hearing Officer ("IHO"). See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

F.3d 131, 135 (2d Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1)). Pursuant to amendments to the IDEA that took effect in July 2005, a parent must "request an impartial due process hearing within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C); see Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 114 n.7 (2d Cir. 2008). Determining when a parent knew or should have known of the discriminatory act "is necessarily a fact-specific inquiry." K.H. v. N.Y.C. Dep't of Educ., No. 12-cv-1680, 2014 WL 3866430, at *16 (S.D.N.Y. Aug. 6, 2014). A party may appeal the decision of the IHO to a State Review Officer ("SRO"). M.W., 725 F.3d at 135–36. Once this administrative process is exhausted, either party may file a civil action in federal or state court challenging the administrative decision. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

If a school district fails to provide a FAPE to a child with disabilities, the child's parents may, at their own financial risk, refuse the improper placement, enroll the child in an appropriate private school, and retroactively seek reimbursement from the state for the cost of the private school by bringing a DPC. See 20 U.S.C. § 1412(a)(10)(C); Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985). "The Supreme Court established the three-pronged Burlington/Carter test to determine eligibility for reimbursement, which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the

child's needs; and (3) a consideration of the equities." C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 73 (2d Cir. 2014); see also Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12–13 (1993); Burlington, 471 U.S. at 370. The DOE bears the burden on the first prong of the test to establish that the student's IEP provided a FAPE. See M.W., 725 F.3d at 135. If the DOE fails to meet this burden, the parents then bear the burden to establish that the alternative private placement was appropriate and that the equities favor the parents. Id.

**B.**

The following facts are taken from the parties' supporting papers and relevant administrative records and are undisputed unless otherwise noted.

I.M. is a student with disabilities. Administrative Record ("A.R.") 2, 350. A Committee on Special Education ("CSE") convened on October 2, 2018 and determined that I.M. was eligible for special education services. Id. at 2, 350. The CSE recommended a 12:1+(3:1) special class for math, English Language Arts, social studies, science, art, and health in a specialized DOE school. Id. at 346–47. The CSE also recommended occupational therapy, physical therapy, speech language therapy, a full-time paraprofessional, an extended school year, and transportation services for I.M. Id. at 346. A CSE convened on November 6, 2019 and found that I.M. was eligible for special education services similar to those recommended in October 2018. Id. at 424–25. The parent was present at both CSE meetings. Id. at 352, 423. The DOE

issued Prior Written Notices ("PWN") for the October 2018 and November 2019 CSE meetings on November 27, 2019. Id. at 372–73, 424–25.

I.M. moved out of New York City during the COVID-19 pandemic and was enrolled in a school in another state. Id. at 555, 905. At some point during the 2023–24 school year, I.M. moved back to New York City. Id. at 905. Upon return to New York City, the plaintiff unilaterally enrolled I.M. in a private school, the International Institute of the Brain ("iBrain"), for the school year beginning in September 2023. Id. at 330. On March 19, 2024, the plaintiff executed an enrollment agreement with iBrain for the school year beginning in September 2023; a representative from iBrain allegedly executed that agreement in September 2023. Id. at 31, 300–06. The plaintiff also executed agreements for transportation and health care services related to I.M.'s iBrain enrollment in January and March 2024. Id. at 307–23.

Montgomery claims she sent a Ten-Day Notice ("TDN") to the DOE in March 2024 informing the DOE of her decision to enroll I.M. at iBrain. Id. at 122–23. The DOE claims that it never received the TDN, id. at 555, and that it only became aware of I.M.'s return to New York City in June 2024, id. at 736.

On June 21, 2024, iBrain sent an inquiry to the DOE asking whether there had been a CSE meeting for I.M. Id. at 574. The DOE responded on June 24, 2024, stating that the DOE did not have records of I.M. attending iBrain and requested I.M.'s records and enrollment information. Id. at 574. The DOE then sought to convene a CSE for I.M. Id. at 555.

On June 25, 2024, the plaintiff filed a DPC alleging that the DOE did not provide I.M. with a FAPE for the 2019–20 and 2023–24 school years. Id. at 111–20. The DPC sought reimbursement for tuition, transportation, and nursing services. Id.

The IHO issued a finding of fact decision ("FOFD") on November 7, 2024, finding that the plaintiff's claims for the 2019–20 school year were time-barred and that the DOE was not obligated to provide a FAPE to I.M. for the 2023–24 school year. Id. at 26–38. The plaintiff appealed the IHO's decision. Id. at 42–56. On April 10, 2025, the SRO issued a decision upholding the FOFD. Id. at 25. The SRO also found that the plaintiff was not entitled to reimbursement because the equities favored the DOE under the Burlington/Carter framework. Id. at 25. The plaintiff commenced this action on August 11, 2025. ECF No. 1.

**II.**

In federal court, summary judgment "is a pragmatic procedural mechanism for reviewing administrative decisions." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). In reviewing an action pursuant to 20 U.S.C. § 1415(i)(2)(C), the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 406

(S.D.N.Y. 2017). The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." L.O. ex rel. K.T. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 108 (2d Cir. 2016). While the district court independently reviews the administrative record and makes a determination based on a preponderance of the evidence, it is "expected to give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Walczak, 142 F.3d at 129; see also M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012).

## III.

### A.

The plaintiff first seeks reimbursement for tuition at iBrain for the 2019–20 school year. The parties dispute whether that claim is barred by the applicable statute of limitations. The parties agree that the plaintiff's claim accrued in 2019 and that the applicable statute of limitations is two years. Pl.'s Mem. Law Opp. Defs.' Mot. ("Pl.'s Opp'n") 8, ECF No. 32; see Defs.' Mot. 8. The plaintiff contends that while her claims would otherwise be time-barred, the two-year statute of limitations should be tolled due to the so-called "withholding-of-information exception" under 20 U.S.C. § 1415(f)(3)(D)(ii). Pl.'s Opp'n 9. That exception provides that the two-year statute of limitations does not apply when a "parent was prevented from

requesting the hearing due to. . . the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D). The burden is on the plaintiff to show the withholding exception applies. Diaz v. N.Y.C. Dep't of Educ., No. 25-CV-1241, 2026 WL 776697, at *6 (S.D.N.Y. Mar. 19, 2026).

The crux of the plaintiff's argument is that the "withholding-of-information exception" applies in this case because the DOE failed to provide the plaintiff with a required notice of procedural safeguards. 20 U.S.C. § 1415(d) provides that the DOE is required to provide notice to parents of the procedural safeguards under the IDEA, including the "time period in which to make a complaint," which is two years after the party "knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B). The notice must be provided once per year and "upon initial referral or parental request for evaluation; upon the first occurrence of the filing of a complaint under subsection (b)(6); and upon request by a parent." Id. § 1415(d)(1)(A). Section 1415(d)(1)(B) also provides that such information may be posted on the DOE's website.

The DOE provided the plaintiff notice that the procedural safeguards were available on its website in the PWN dated November 27, 2019.[2] See A.R. 424–27. The plaintiff contends that the PWN contains vague instructions for

[2] Montgomery claims that she received the PWN in January 2020. See Pl.'s Mot. 14. Whether the PWN was received in November 2019 or January 2020 is irrelevant because the complaint was filed in June 2024, more than two years after either date. A.R. 111.

obtaining a copy of the procedural safeguards instead of a written explanation of the time limits for filing a DPC and the requirements for unilateral placement. Pl.'s Mot. 10–11; Pl.'s Opp'n 9. The plaintiff therefore argues that the statute of limitations should be tolled until 2023, when the parent discovered her rights to file a DPC. See Pl.'s Mot. 11; Pl.'s Opp'n 12. However, as the IHO and SRO found, the DOE posted the relevant notice of procedural safeguards, including the time period in which the plaintiff was required to make a complaint, on its website, A.R. 14, 18–20, and the DOE provided the plaintiff with a PWN containing instructions for accessing those procedural safeguards. Id. at 426. The IHO and SRO therefore correctly concluded that the DOE met its obligation to provide notice of the procedural safeguards and that the "withholding-of-information" exception did not toll the applicable statute of limitations.[3]

[3] In resisting this conclusion, the plaintiff cites to a response to a comment in the Federal Register providing that an agency "would not meet its obligation in [34 C.F.R.] § 300.504(a) by simply directing a parent to [a] Web site." 71 Fed. Reg. 46693. 34 C.F.R. § 300.504, in turn, provides that an agency must provide "a copy of the procedural safeguards" and that the agency may place the copy on "its Internet Web site." The plaintiff does not explain why a response to a comment in the Federal Register is binding on the DOE or why the comment trumps the plain language of the relevant regulation, § 300.504. But the plaintiff's argument fails in any event, because the comment in the Federal Register goes on to provide that "a public agency must still offer parents a printed copy of the notice." Id. (emphasis added). That is precisely what happened in this case. In the PWN, the DOE provided instructions for requesting a physical copy of the procedural safeguards. A.R. 426. The PWN also gave information on how "to address the Committee. . . on the appropriateness of the Committee's recommendations" and request an impartial hearing. Id. at 427. Moreover, as explained in the text below, the plaintiff's

The plaintiff's attempt to evade the two-year statute of limitations also fails because the parent knew of her rights to challenge the DOE's alleged denial of a FAPE in 2019. The plaintiff attended two CSE meetings—one in October 2018 and one in November 2019. Id. at 352, 423. After the November 2019 CSE meeting, she received a PWN directing her to the website with the complete procedural safeguards, providing information on how to receive a copy of the full instructions, and explaining basic rights to challenge the committee through an impartial hearing. See id. at 426–27. As Courts in this District have held, such a showing is sufficient to begin the running of the statute of limitations. See Bd. of Educ. v. C.M., No. 16-cv-3924, 2017 WL 2656253, at *9–10 (S.D.N.Y. June 20, 2017); Bd. of Educ. v. C.M., 744 F. App'x 7, 11 (2d Cir. 2018); N.J. v. N.Y.C. Dep't of Educ., No. 18-cv-6173, 2021 WL 965323, at *12 (S.D.N.Y. Mar. 15, 2021). Moreover, although it is her burden to establish that an exception to the statute of limitations applies, the plaintiff has not provided any evidence that she was either prevented from requesting a hearing or that she did not know or should not have known of her right to request such a hearing.

The plaintiff's claim for tuition reimbursement for the 2019–20 school year is therefore time-barred. The plaintiff's motion for summary judgment on that claim is therefore **denied**, and the defendants' cross-motion for summary judgment dismissing the claim is **granted**.

---

claim is also time-barred because she knew of her right to challenge the DOE's alleged denial of a FAPE in 2019.

## B.

The plaintiff also seeks reimbursement for tuition at iBrain for the 2023–24 school year. The defendants contend that they had no obligation to provide a FAPE for the 2023–24 school year because the DOE had no reason to suspect that I.M. had returned to the district after moving away in 2020. See Defs.' Mot. 11–12. The plaintiff, in contrast, argues that the DOE did have a FAPE obligation for the 2023–24 school year because, under the so-called "Child Find" regulations, the DOE was required to consult with iBrain to identify students in the district in need of special education services.

The IDEA's "Child Find" obligation requires each state to have policies and procedures to ensure that all children with disabilities are identified and evaluated for special education and related services. 34 C.F.R. § 300.111(a)(1)(i)–(ii). A state's duty to evaluate a student can be triggered by a request by the student's parents, the school district, or others. 20 U.S.C. § 1414(a)(1)(B). Once such a request has been made, the IDEA requires the State to conduct an initial evaluation of the student "within 60 days of receiving parental consent for the evaluation" or within the timeframe established by the State if the State has established its own timeframe. 20 U.S.C. § 1414(a)(1)(C)(i)(I); 34 C.F.R. § 300.301(c)(1)(i)–(ii). The Second Circuit Court of Appeals has explained that,

> to prevail on a claim that a district has failed to identify a student who should be evaluated for purposes of receiving special education, a claimant must show that school officials overlooked clear

> signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate. A school district must begin the evaluation process within a reasonable time after the district is on notice of a likely disability.

Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 750 (2d Cir. 2018).

As the SRO correctly concluded, the DOE's duty under the Child Find obligation did not arise until June 2024, when the DOE received an email from iBrain inquiring as to the status of I.M.'s IEP meeting. See A.R. 23–25, 31–32. Before that time, the DOE was under the impression that I.M. had moved out of state and was no longer subject to compulsory education. Id. at 23. Indeed, a DOE representative testified that I.M. was not on the DOE's list of iBrain students and that the DOE was unaware of I.M.'s return to the district until June 2024. Id. at 23–24. As the SRO found, "the parent failed to testify in this matter and there is no documentary or testimonial evidence to rebut the [DOE]'s position that it was unaware that the student had returned to the district [before June 2024]." Id. at 24.[4] By that time, it was too late to evaluate I.M. for special education services for the 2023–24 school year. Id. at 25. The plaintiff argues that the DOE's Child Find procedures were defective but has failed to identify any regulation requiring the DOE to do more to attempt to locate I.M given that the DOE was under the impression that I.M.

[4] The plaintiff claims that she sent the DOE a TDN in March 2024. Pl.'s Mot. 7; see A.R. 122–23. However, as explained above, the plaintiff produced no witnesses to testify whether she actually sent the TDN or whether she ever notified the DOE of the student's return.

had moved out of the district in 2020. The plaintiff has therefore failed to show that the DOE "overlooked clear signs of disability" or was "negligent in failing to order testing" or that there was "no rational justification for not deciding to evaluate." Mr. P, 885 F. 3d at 750. Because the DOE did not have an obligation to provide I.M. a FAPE for the 2023–24 school year, the plaintiff is not entitled to tuition reimbursement for that year.

The plaintiff is also not entitled to tuition reimbursement because the equities do not favor the parent under the third prong of the Burlington/Carter test. "[R]eimbursement is barred where parents unilaterally arrange for private educational services without ever notifying the school board of their dissatisfaction with their child's IEP." Ferreira v. Aviles-Ramos, 120 F.4th 323, 330 (2d Cir. 2024). Likewise, an important factor is "whether the parents obstructed or were uncooperative." Id. "[C]ourts have looked disfavorably upon plaintiffs who never intended to enroll their child in a public school and only went through this process hoping to get an award of tuition reimbursement," finding that such parents cannot show that the equities tip in their favor. P.G. v. N.Y.C. Dep't of Educ., 959 F. Supp. 2d 499, 516 (S.D.N.Y. 2013). In this case, the record shows that the plaintiff did not intend to enroll I.M. in public school for the 2023–24 school year. While the exact timing of I.M.'s return to the district is unclear, the record suggests two possibilities: (1) the plaintiff enrolled I.M. in iBrain in the beginning of the 2023–24 school year, or (2) the plaintiff enrolled I.M. in iBrain in early 2024. See A.R. 24, 31. In either situation, the parent made no attempt to

communicate with the DOE before unliterally enrolling I.M. at iBrain. Id. at 25, 31. Having participated in two CSE meetings before leaving the district, the plaintiff was aware of the process to obtain an IEP for I.M. Id. at 30. Instead of working with the DOE to enroll I.M. in public school with proper accommodations, the plaintiff enrolled I.M. at iBrain and sought compensation from the DOE considerably after that enrollment. Because the plaintiff did not intend to enroll I.M. in public school, the equities do not favor reimbursement.

The plaintiff's motion for summary judgment on the reimbursement claim for the 2023–24 school year is **denied**, and the defendants' cross-motion for summary judgment dismissing the claim is **granted**.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motion for summary judgment is **denied**, and the defendants' cross-motion for summary judgment is **granted**.

The Clerk is respectfully requested to enter judgment dismissing the complaint with prejudice. Ther Clerk is also respectfully requested to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 16, 2026**

**John G. Koeltl**
**United States District Judge**